UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEXA KLINAKIS, JORDAN KRAVETZKY,
NICOLE WHITE, MATEO VELEZ, LANEY
HEIDRICH, CLAUDIA RODRIGUEZ, and ANGIE
CIPRIANO on behalf of themselves and as representatives
of other class and collective action members similarly
situated,

       Plaintiffs,

v.

ALTUS JOBS, LLC, and SAUM DUSTIN
SHARIFI

       Defendants.

_____/

PUTATIVE COLLECTIVE & CLASS
ACTION LAWSUIT

Case No: 6:22-CV-01756-RBD-DAB

## **FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

ALEXA KLINAKIS, JORDAN KRAVETZKY, NICOLE WHITE, MATEO VELEZ, LANEY HEIDRICH, CLAUDIA RODRIGUEZ, and ANGIE CIPRIANO, on behalf of themselves and as representatives of other class members similarly situated, file suit against ALTUS JOBS, LLC ("ALTUS") and Saum Dustin Sharifi ("SHARIFI"), and allege the following in support thereof:

## **JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction pursuant to the Fair Labor Standards Act (29 U.S.C. § 201, et. seq.) claims (Counts I and II) by virtue of 28 U.S.C. § 1331 since these claims involve a federal question.

2.     This Court has supplemental jurisdiction over the remaining state common law claims based on 28 U.S.C. § 1367, as the state common law claims share all common operative facts with the federal law claim, and the parties are identical.

3.     Resolving all state and federal claims in a single action engenders the best interest of judicial economy and fairness to the litigants.

4.     Venue is proper in this District based on 28 U.S.C. § 1391 because ALTUS maintain its principal place of business in the jurisdictional boundaries of this District; likewise, the operative acts and omissions giving rise to every claim transpired within the jurisdictional boundaries of this District.

## **PARTIES INVOLVED IN THIS LAWSUIT**

5.     Each Plaintiff is an individual over the age of majority, a former employee of ALTUS, and a person who was not paid compensation lawfully due her or him from ALTUS.

6.     The various individuals that will ultimately comprise both the collective and class action members are either a current or former ALTUS employee who were not paid all compensation lawfully due her or him from ALTUS.

7.     ALTUS is a limited liability company organized and existing under the laws of the State of Florida; its federal employer identification number is 45-2394424 and its Florida corporation identification number is L1100000607032.

8. According to the official records of the Florida Division of Corporations (of the Florida Department of State), ALTUS maintains its principal place of business at 2600 Lake Lucien Drive, Suite 109, in the City of Maitland, Florida.

9. Based on testimony provided by a corporate representative of ALTUS in other lawsuits, Saum Dustin Sharifi ("SHARIFI") is the only member (owner) of the limited liability company, and he is its sole manager.

10. SHARIFI is an individual that maintains his primary residence at 1967 Meadow Crest Lane, which is in the City of Apopka, Orange County, Florida. According to ALTUS' website, SHARIFI is the Founder and President of ALTUS, where he leads the company towards delivering its mission of powering advancements in the global workforce.

### ESSENTIAL INFORMATION ABOUT ALTUS JOBS.

11. ALTUS represents itself to the public, as described on its website, as:

> Altus is on the forefront as a cutting edge recruiting firm, most specialized in the high-demand Architectural, Engineering, and Construction market. We've invested in creating technologies and processes over the last decade that confidentially identify vertical alignment opportunities.

12. ALTUS focuses on direct-hire placements for thousands of companies nationwide, and claims that it is "primarily utilized by our globally recognized Clients for large-scale nationwide recruiting needs. We represent many rising company brands that are growing rapidly into the next generation."

13.     ALTUS further claims that it "continues to grow by a proven track record of adding value via navigating high level placements within top-ranked organizations. We also provide first-hand insight to the current calculation of your skills & experience in today's market."

14.     ALTUS represents to the public that it "is currently comprised of a team of 50+ individuals through two offices. With an East + West coast office presence, we are flexible to service your time zone more effectively".

15.     Plaintiffs, along with the other individuals that will ultimately comprise the class and collective action, were employed by ALTUS to execute its business objectives, specifically assisting the company to provide talent recruitment and placement services for a profit, and for which ALTUS was and remains obligated to compensate these employees for their efforts.

16.     Plaintiffs, and other ALTUS employees were to receive compensation for originating accounts by, among other things: (a) identifying strategies to hire customers for ALTUS recruitment and employee placement services; (b) actively pursue customer engagements; (c) recruiting the human talent necessary to satisfy the customer's needs; and (d) making all efforts to place the talent with the customers, which is how ALTUS generates the vast majority (if not all) of its income.  Essentially, ALTUS employed the Plaintiffs and its other employees to generate revenue as indicated above, with the expectation of paying the employees compensation for their labor and efforts expended on behalf of ALTUS.

17.     ALTUS, over the past several years, has engaged in a pattern and practice of refusing to compensate its employees at the whim of SHARIFI, often with an aim of allowing SHARIFI to use those funds for his own benefit to the detriment of ALTUS employees.

18.     SHARIFI routinely comingled company funds with his own personal accounts, and routinely used company resources to support his lavish lifestyle, often depleting ALTUS' resources so that it could not satisfy its obligations to the employees – i.e., ALTUS employees, such as Plaintiffs, suffered the consequences of SHARIFI's misappropriation and misuse of ALTUS' money for his own benefit.

19.     ALTUS, at the direction of SHARIFI, routinely withheld paying portions of wages or other compensation due to ALTUS employees (in whole or in part), made unlawful deductions from the employee's paychecks, outright refused to pay any wages to ALTUS employees at times, retaliated against ALTUS employees for questioning unlawful behaviors (such as the compensation structures) or any combination of malevolent and intentional behaviors.

20.     ALTUS' behavior had been so outrageous that one of its former owners, who was also an ALTUS employee and SHARIFI's business partner, filed a lawsuit in 2017 against this ALTUS and SHARIFI to correct this behavior.   The complaint alleged much of the same malfeasance alleged in the instant action. ALTUS' refusal to properly compensate its employees for all money lawfully due them and to appropriately handle Altus's funds/lack of appropriate business formalities, despite other prior lawsuits, has not ceased and continues to this day.

21.     Additionally, ALTUS has failed, and continues to fail, to maintain proper business records concerning employee compensation (among other things), a fact confirmed by SHARIFI during his deposition in another case. This failure, whether intentional or negligent, is a violation of federal and state laws concerning the retention of employee records.

22.     ALTUS has several conflicting policies, procedures, and quasi employment related contracts with its employees that it relies upon from time to time to decide if and when it will compensate employees, and how much it will compensate an employee during any given pay period. SHARIFI and/or ALTUS often modifies written policies, procedures, and quasi agreements by making false and misleading representations to ALTUS employees about promotions, bonuses, and other compensation that ALTUS intended to pay the employee as a means of coercing them to remain with the company.

23.     ALTUS, through SHARIFI, routinely retaliated against employees for asking questions about unpaid wages by withholding compensation, threatening termination of employment, harassing the employee, or terminating the employee without reason or cause.

a. To provide example, after a former employee made complaints about his owed compensation (and thereafter that person became a former ALTUS Employee), SHARIFI advised another then-current employee (now former employee) that he was not going to pay the first mentioned former employee his owed compensation for making such complaints.

24.     SHARIFI routinely verbally abused, blackmailed, threatened, and intimidated ALTUS employees often withholding compensation to strongarm employees to continue to perform services for ALTUS.

25.     This unlawful practice became worse during COVID-19 –2020 and 2021 – as SHARIFI routinely used strongarm tactics to keep employees on the payroll (although they may not have been receiving their full compensation) so that ALTUS and SHARIFI could apply for PPP loans, much of which was diverted to SHARIFI to support his personal obligations.

      a.     Upon information and belief, SHARIFI manufactured a former employee's employment termination date so that he can show a higher number of employees/payroll for financial gain.

26.     Throughout history, federal and state governments alike have instituted an array of laws to protect the public—employees of companies—from abuse and exploitation.

27.     ALTUS, in contradiction to these laws designed to protect hardworking individuals, requires its employees to conduct work on its behalf and for its profit without providing the owed and deserved compensation for the employees' efforts. ALTUS has denied paying wages owed to its employees and former employees or has held wages "hostage" to punish them.

28.     Frequently, ALTUS (through SHARIFI) would arbitrarily deduct certain percentages of wages for an alleged "performance" issue when in fact, Plaintiffs' metrics met and/or exceeded any expectations. These deductions would be kicked

back to ALTUS as the employer for SHARIFI and ALTUS' benefit.  ALTUS has gone so far as to retain owed wages (for their own benefit) as a "bargaining chip" to keep individuals employed and/or in exchange for refraining from firing them.

29.     ALTUS intentionally declined to compensate its essential (and profitable) employees—forcing them to work without pay and suffer arbitrary, unreasoned, and unfair deductions in the paychecks rightfully earned for their work.

30.     ALTUS has taken steps to actively thwart, delay and harass employees that seek legal action to seek redress for ALTUS' unlawful business practices.

**a.** For example, three of the named plaintiffs initially filed individual lawsuits against ALTUS because of the unlawful wage practices described above.

**b.** ALTUS aggressively opposed the relief sought in the State Court system and filed motions asking the Court to compel those plaintiffs to submit their grievances to arbitration.

**c.** On March 5, 2021, the State Court granted ALTUS's request by entering an order obligating the employees to file an arbitration demand through the American Arbitration Association (AAA), which is specifically how ALTUS wanted to handle these claims.

**d.** The employees complied with the Court's directions and filed the required demand and supporting paperwork with the AAA and paid all administrative filing fees required by AAA.

e. ALTUS, however, ***refused to participate*** by, among other things, refusing to pay its portion of the administrative filing fees required by AAA – the organization that ALTUS chose and forced the employees to use.

f. AAA, based on ALTUS' refusal to pay the required administrative filing fees, closed the arbitrations, refunded the employees their portion of the filing fee, and issued letters stating that they would not accept any further claims involving ALTUS.

   i. To provide example, on or about May 3, 2021, the AAA advised the parties that Defendants (as the Respondents in the arbitration matter) had "failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol" and hence, the AAA would "decline to administer any future employment matter involving the Respondent. We would ask that Respondent remove our name from its arbitration agreements so there is no confusion to the public."

   ii. As such, it is also clear that Defendant cannot compel any of his current of former employees to arbitration, and any right to do so has effectively been waived.

## COLLECTIVE ACTION ALLEGATIONS

31. The named parties, like the putative collective action members, were residents of the State of Florida at the time the action accrued and during their tenure of employment with ALTUS. The Plaintiffs and putative collective action members,

are or were employed by ALTUS at any time from 2017 to the entry of judgement in this case (the "*Collective Period*").

32.     The Plaintiffs and putative class members were non-exempt employees for the applicable time periods and were issued W2s for services performed on behalf of ALTUS.

33.     The named Plaintiffs bring this suit on behalf of themselves, and all others similarly situated.

34.     ALTUS's compensation practices violate the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, 215 which obligates employers to pay employees, including overtime and minimum wage, for all hours worked, among other issues addressed in the statute and the myriad of Court decisions interpreting the statute.

35.     Pursuant to the FLSA, Plaintiffs, and all others similarly situated, seek to prosecute their claims as a collective action on behalf of all current and former ALTUS employees during the applicable statutory period of time who were not compensated appropriately for accounts and talents they originated.

36.     A collective action is appropriate in this circumstance because the Collective Action Members (the "Collective") are similarly situated in that 1) they were subjected to ALTUS' unlawful compensation program and policies which compensated them less than the federal minimum wage for all hours worked and/or failed to pay overtime wages when appropriate; 2) they were victim of ALTUS' failure to pay wages; 3) they were forced to endure predatory and retaliatory behavior from ALTUS/SHARIFI that denied them compensation or forced termination of

employment (i.e. constructive termination); and 4) further acts of unlawful conduct described later in this pleading consistent with applicable law.

37.     Plaintiffs' damages are substantially similar to other members of the Collective because each were 1) not paid wages at or above the federal minimum wage by ALTUS for all hours worked; 2) were victims of ALTUS's unlawful compensation program and were not paid all compensation due to them—i.e. they were not paid compensation at all; 3) forced to endure predatory and retaliatory behavior from SHARIFI/ALTUS that denied them compensation and often resulted in discipline or termination of employment; 4) were not paid overtime wages for any hour worked in in excess of forty hours per week; plus 5) statutory liquidated damages as provided by federal law for ALTUS's failure to pay wages as required by the FLSA.

38.     The class of similarly situated individuals or potential Collective Action Members sought to be certified pursuant to the FLSA is defined as:

> All former and current ALTUS employees who worked for ALTUS during the Collective Period who, consistent with ALTUS's website, were recruiters/sales people recruiting talent for clients on behalf of ALTUS and were not compensated their A) statutory minimum wage for all hours worked per week during one (1) or more weeks, and/or B) were not compensated time-and-a-half for all hours worked in excess of forty (40) hours, and/or C) were not fully compensated monies owed to them for work performed on behalf of ALTUS, and D) experienced employment retaliation at the hands of ALTUS/SHARIFI.

39.     The precise size and identity of the entire Collective is ascertainable from the business records, tax records, and/or employee personnel records of ALTUS. Upon information and belief, ALTUS has employed over 50 individuals who were

paid under its unlawful compensation practice in violation of the Fair Labor Standards Act in Florida during the Collective Period.

40.     ALTUS compensated the Collective in the same manner and under the same unlawful employee compensation program, and each of them has worked in Florida during the Collective Period.

41.     Plaintiffs maintain the right to modify the Collective and or to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

## CLASS ACTION ALLEGATIONS

42.     The Plaintiffs and putative class action members, are or were employed by ALTUS at any time from 2017 to the entry of judgement in this case (the "*Class Period*").

43.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs and all others similarly situated, seek to prosecute their Florida common law claims as a class action on behalf of all current and former ALTUS employees who were not compensated appropriately for recruitment and sales activities that were performed on behalf of ALTUS.

44.     A class action is appropriate in this circumstance because the Class Members are similarly situated in that they were subjected to ALTUS' unlawful employment practices by performing services on Defendant's behalf, such as the establishment of business relationships, training/assisting other employees,

performing recruitment and sales services on behalf of Defendants, and increasing profits for the benefit of Defendant through their activities.

45.     The class of similarly situated individuals or potential Class Members sought to be certified pursuant to Fed. R. Civ. Pro. 23 is defined as:

> All former and current ALTUS employees who worked for ALTUS during the Class Period who, consistent with ALTUS's website,  were recruiters/sales people recruiting talent for clients on behalf of ALTUS and who were not compensated for such services and benefits conferred to ALTUS.

46.     The precise size and identity of all Class Members is ascertainable from the business records, tax records, and/or employee personnel records of ALTUS. Upon information and belief, ALTUS has employed over 50 individuals who were not compensated for the benefits conferred upon and on behalf of ALTUS as a result of their hard-working efforts.

### (i)      *Numerosity of the Putative Class.*

47.     Class Members are so numerous that their individual joinder is impracticable. Although the precise identities, numbers and addresses of all Class Members are currently unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of ALTUS. Upon information and belief, there are more than fifty (50) Class Members during the Class Period.

### (ii)     *Existence of Common Questions of Fact and Law.*

48.     There is well-defined commonality in the questions of law and fact involved affecting Class Members. The common questions of law include, but are not limited to:

    a.    Whether ALTUS employed Class Members within the meaning as prescribed by law.

    b.    What proof of hours worked is sufficient where employers fail in their duty to maintain time records.

    c.    Whether ALTUS failed and/or refused to pay Class Members for services performed by the Class Members for the direct benefit of ALTUS.

    d.    Whether ALTUS failed and/or refused to compensate Class Members for all hours worked and benefits conferred on behalf of ALTUS.

    e.    The misclassification and/or appropriate classification of the Class Members.

    f.    Whether ALTUS acted with intention—willfully and maliciously—in its actions; and

    g.    Whether ALTUS is liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, interest, costs and disbursements, and attorneys' fees.

    ***(iii)    Typicality.***

49.     Plaintiffs' claims are typical of the claims of all Class Members because they were employed in the same capacity during the Class Period; Plaintiffs experienced the same harms and violations of law as all other Class Members.

50.     Additionally, all claims arise from the same conduct and factual basis including ALTUS' historical unlawful compensation practices, as described above.

    ***(iv)    Adequacy.***

51.     Plaintiffs are adequate representatives of Class Members because their interests do not conflict with the interests of other Class Members they seek to represent.

52.     Plaintiffs have retained competent counsel for this class action and intend to vigorously pursue this action.   Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members.

*(v)     **Predominance and Superiority.***

53.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against ALTUS.

54.     The individual members of the class no longer have interest or capacity to bring separate actions. As to any plaintiff with pending litigation against the Defendants, such Plaintiffs would prefer to litigate their interests within this class action lawsuit and would intend to stay their pending individual lawsuits in favor of the instant action. The named plaintiffs find it is desirable to concentrate the litigation into one cohesive case.

55.     There are no likely difficulties that will arise in managing the class action.

56.     This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class Members predominate over the questions affecting only individual members of the class; a class

action is superior to other available means for the fair and efficient adjudication of this action.

57. The damages suffered by individual Class Members may be disproportionate to the burden and expense of complex litigation of these claims on an individual basis.

58. Additionally, individual litigation may lead to inconsistent and conflicting judgments against ALTUS; therefore, effective redress for each and every Class Member may be limited or impossible.

59. A class action which involves all Class Members favors judicial economy, fairness, and provides the benefit of a single, consistent, adjudication on the issues herein claimed.

60. Plaintiffs maintain the right to modify the class and or create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

## GENERAL ALLEGATIONS

61. Plaintiffs have engaged the law firm of éclat Law, PA to serve as lead trial counsel for the Plaintiffs and the Collective and Class members. Plaintiffs are obligated to compensate trial counsel for services rendered in connection with prosecuting their rights as alleged herein.

62. All conditions precedent to filing this lawsuit have transpired, have expired, or have been effectively waived.

## COUNT I
## VIOLATIONS OF THE FLSA

63.     Collective Action Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64.     The Collective brings this cause of action for unpaid wages owed and damages as a result of retaliatory tactics pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq.

65.     At all times material hereto, ALTUS was and continues to be a direct employer within the meaning of FLSA 29 U.S.C. §203(d) of the plaintiffs and putative class members.

66.     At all material times hereto, Collective Members were "employees" of ALTUS within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

67.     The similarly situated Collective Members are current and former ALTUS employers during the effective Collective Period who, consistent with ALTUS's website, were recruiters/sales people recruiting talent for clients on behalf of ALTUS and were not appropriately compensated wages as required under the FLSA. Additionally, all were subject to retaliatory tactics and a hostile work environment, experiencing damages as a result of the same.

68.     Plaintiffs were, at all times relevant to this action, adults residing in Florida.

69.     Collective Action Members consent to sue in this action pursuant to 29 U.S.C. § 216(b); additional potential opt-in plaintiffs may execute and file forms consenting to "opt in" and joining as plaintiffs in this collective action.

70.     Collective Action Members were hired by ALTUS to perform duties on behalf of ALTUS and for ALTUS's profit during the Collective Action Period. Collective Action Members were employed by ALTUS as described above.

71.     By failing to pay minimum wages, overtime wages, failing to outright pay complete wages free and clear as required, and retaliating against employees, ALTUS has violated, and continues to violate Sections 206, 207, and 215 of the FLSA, amongst other things.

72.     The conduct described throughout this Complaint and above constitutes a willful violation of the FLSA.

73.     ALTUS knew that it was required to pay its employees at least the requisite minimum wage for all hours worked and overtime pay for hours worked over 40 hours per work week. Moreover, ALTUS was well aware that it had an obligation to generally pay its employees for all work the employees conducted on behalf of ALTUS, yet failed to outright pay such amounts in several instances.  Additionally, ALTUS maintained a culture of toxicity and a hostile work environment during, after, and before the applicable period at issue.

74.     Instead of lawfully paying its employees, ALTUS established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

75.     ALTUS has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint. Application of these practices does/did not depend on the personal circumstances of the Collective Action Members. Rather, the same practices which result in the non-payment of wages to Collective Action Members apply to all Collective Action Members.

76.     Collective Action Members are/were entitled to be paid at least minimum wage for all hours worked during the workweek pursuant to FLSA 29 U.S.C. § 206.  ALTUS violated FLSA 29 U.S.C. § 206 by failing to pay minimum wages, as described above, and caused Collective Action Members to suffer lost wages and interest thereon.

77.     Additionally, ALTUS violated FLSA 29 U.S.C. § 207 by failing to pay overtime wages, as described above, and caused Collective Action Members to suffer lost wages and interests therefrom.

78.     Collective Action Members have been required to work eight (8) hours per day, and beyond, without receiving the full compensation for the hours worked. More frequently, Collective Action Members worked over a forty (40) hour work week for the benefit of ALTUS.

79.     Similarly, there were several instances where ALTUS simply did not pay wages owed to employees, and hence, outright back-wages are owed.

80.     Due to ALTUS's misconduct and malevolent employee compensation practices, Collective Action Members did not earn wages at the minimum wage rate or overtime rates for all of their hours worked during one or more work weeks.

81.     ALTUS knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper wages as compensation with respect to Collective Action Members.

      **a.** As an example, in 2020, SHARIFI advised one former employee that he was not intending to pay another former employee the compensation and commissions owed to him after termination.

      **b.** Additionally, during COVID-19, SHARIFI advised ALTUS employees that he would not be paying full wages owed for a particular period of time.

      **c.** Such statements and actions demonstrate a plotted effort and willful intent to avoid paying appropriate wages to employees.

82.     ALTUS knew that Collective Action Members were owed compensation and that ALTUS was required to pay such compensation. However, ALTUS failed to do so and has acknowledged its failure to do so as to certain named Plaintiffs.

83.     Moreover, in violation of the FLSA statute including 29 U.S.C. § 215, ALTUS retaliated against its employees who raised concerns about their wages or asked questions about compensation practices of ALTUS (such as deductions in employee wages to compensate other subordinate/support staff).

84.     When Plaintiffs and/or putative class members would raise questions regarding compensation owed, compensation practices, or the culture of ALTUS, SHARIFI would underhandedly cause employees to fear the loss of their jobs. In many circumstances, SHARIFI would make the ALTUS workplace so hostile and difficult

that employees were forced to resign as a result of fear and frustration. The retaliation also took the form of harassment, defamation, insults, intimidation, threats, and retention of benefits owed to the Plaintiffs.

85.    Many times, this retaliatory and hostile behavior continued even after employment. For example, Defendant, or someone on the behalf of Defendant has sent threatening, obscene, and harassing text messages to former employees after termination of employment.

86.    The retaliatory conduct is intended to harass, humiliate, and bully the employees in retaliation for lawfully exercising his or her rights or raising concerns about compensation.

87.    Defendant has even tried to take retaliatory action against Plaintiffs through their attorney, by sending crass and obscene emails to the Plaintiffs' attorneys to discourage employees from pursuing their rights through litigation.

88.    There is a causal connection between ALTUS's hostile actions against employees and the employees' conduct of raising valid concerns of unlawful activity because frequently after an employee would raise such a concern, SHARIFI would become inordinately difficult to work with, spew vile expletives against the employee, and in many instances the employees would experience unlawful deductions in their paychecks.

89.    Moreover, as a result of ALTUS' intentional, willful, and unlawful acts in refusing to pay Collective Action Members minimum wages, overtime wages, and wages in general (i.e. no payment was made, hence back-pay is owed) for one or more

workweeks, Collective Action Members, and those similarly situated to them, have suffered damages, and incurred reasonable attorneys' fees and costs as provided in the FLSA statute.

90.     As a result of ALTUS' willful violation of FLSA § 206, 207, and 215, Collective Action Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, and any damages experienced as a result of Defendant's retaliatory acts and liquidated damages as per 29 U.S.C. § 216 and other provisions within the FLSA statute.

91.     Collective Action Members are entitled to recover from ALTUS their unpaid minimum wages/overtime wages, damages for unreasonably delayed payment of wages, and any damages experienced as a result of Defendant's retaliatory acts, liquidated damages or pre-judgment interests, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the FLSA statute.

92.     Because ALTUS' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

93.     Collective Action Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join, and appointing Plaintiffs and their counsel to represent the Collective Action Members.

**WHEREFORE**, the named Plaintiffs and the putative Collective Action Members demand judgment against Defendant, ALTUS JOBS, LLC for the payment of all hours worked by each of them for which ALTUS did not properly compensate them (including minimum wage, overtime wages, and otherwise unpaid wages owed), liquidated damages, prejudgment interest in the event liquidated damages are not awarded, and any damages experienced as a result of Defendant's retaliatory acts, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

## COUNT II

## FAILURE TO COMPLY WITH 29 C.F.R. § 531.35 "FREE AND CLEAR" PAYMENT; "KICKBACKS."

94.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

95.     Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer to the employee unless they are paid finally and unconditionally or "free and clear."

96.     Further, wage requirements will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. Kickbacks include but are not limited to direct reductions in employee's pay checks for the benefit of the employer, amongst other things.

97.     ALTUS routinely arbitrarily deducted pay on a regular basis without reason or description—a benefit kicked-back directly to Defendants. To provide example, Plaintiffs experienced one or more of the following:

     a.  ALTUS, without the express agreement of Plaintiffs, deducted portions of their earned wage for alleged "poor performance", contrary to other direct feedback and positive performance statistics of Plaintiffs.

     b.  There were instances where ALTUS would deduct portions of Plaintiffs' wages to pay certain subordinates or support staff without the express consent of the Plaintiffs.

     c.  ALTUS frequently deducted portions of Plaintiffs' rightfully earned wages as an exchange for "keeping employment" and/or not being terminated or even to pay the legal fees of the company.

98.     ALTUS deducted directly from Plaintiffs' wages on a regular basis to, in essence, pay the cost of other employees; in other words, ALTUS would deduct anywhere from approximately six (6) to twenty (20) percent of certain wages from Plaintiffs to pay "lead generators" or other personnel without Plaintiffs' express agreement. Moreover, Plaintiffs were fearful of questioning such practices as a result of the hostile work environment at ALTUS. Effectively, ALTUS paid their employee-lead-generators through the wage earnings of other W2 employees.

99.     As such, the Plaintiffs routinely kicked-back their wages to the employer, which consequently benefitted the employer. ALTUS' arbitrary and unlawful deductions of Plaintiffs' earned wages resulted in Defendants' willful violation of 29 C.F.R. § 531.35 as Plaintiffs' pay was not provided "free and clear" of other conditions.

100.   As a direct and proximate result of the kickbacks described throughout this Complaint, Plaintiffs were damaged because they did not enjoy the earned benefit of his whole paycheck, without any kickbacks to ALTUS.

WHEREFORE, the named Plaintiffs and any putative Collective Action Members are entitled to receive compensation that was kicked-back to the employer, which was unlawfully taken, plus interest, attorneys' fees, and cost, including any other remedy provided and applicable under law.

## COUNT III
## UNJUST ENRICHMENT

101.   Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

102.   Plaintiffs conferred monetary and other business-related benefits upon ALTUS, who had knowledge thereof, by performing services on ALTUS' behalf, such as the establishment of business relationships, performing recruitment services on behalf of ALTUS, and promoting ALTUS to increase profits for ALTUS.

103.   ALTUS voluntarily accepted the benefits provided by Plaintiffs (described above), retained the benefits, and enjoyed those benefits.

104.   ALTUS was unjustly enriched, at the expense of Plaintiffs.   The circumstances render ALTUS' retention of the benefit inequitable unless ALTUS pay Plaintiffs the value of the benefit.

105.   Plaintiffs are entitled to damages because of ALTUS' unjust enrichment.

WHEREFORE, the named Plaintiffs and putative class members pray for the entry of judgement in their favor and against Defendant, ALTUS JOBS, LLC, for damages, for attorneys' fees and costs, plus interest and for such other and further relief this Court deems just and proper.

## COUNT IV
## PIERCING THE CORPORATE VEIL: SAUM DUSTIN SHARIFI IS PERSONALLY LIABLE FOR THE ACTS, OMISSIONS, AND ALL DAMAGES DESCRIBED HEREIN

106.    Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

107.    As described above, SHARIFI was the sole owner and operator of ALTUS at all times relevant to this litigation. No other person had control over the acts of ALTUS. All direction came from SHARIFI.

108.    As such, SHARIFI was and is the alter ego of the ALTUS company, especially as he is the only controller of the company.

109.    ALTUS has been used for improper purposes. Upon information and belief:

    a. SHARIFI improperly comingles company funds (including funds that should be earmarked for employee compensation) to pay for personal items such as his mortgage or rent and personal credit cards.

    b. He also retains wages and other compensation owed to employees, using that money as a "loan" to ALTUS and uses those funds for both company and personal obligations.

c.   Additionally, SHARIFI altered the date of a former employee's termination date in an effort to obtain additional funds for a PPP loan.

110.   Therefore, SHARIFI improperly received the direct benefit of these acts and omissions and is personally liable for conduct committed as an officer, director, and/or manager of ALTUS. SHARIFI engaged in transactions from which he, as the sole officer of ALTUS, derived improper personal benefits directly in the form of monetary funds.

111.   The corporate veil in this instance must be pierced to prevent any fraud or injustice. SHARIFI employed ALTUS to perpetrate unlawful, coercive, and deceitful conduct upon the named Plaintiffs and putative class/collective action members. Hence, he should be held liable for the acts, omissions, and damages described within this Complaint. Moreover, SHARIFI directly made all the decisions—acts and omissions—as described herein, which had a direct effect on the compensation owed to Plaintiffs.

WHEREFORE, PLAINTIFFS and putative class/collective action members respectfully request that SHARIFI be held personally liable to the extent necessary as the alter ego of ALTUS, for damages, for attorneys' fees and costs, plus interest and for such other and further relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully request a jury trial on all triable issues above as Plaintiffs contest the validity and enforceability of any alleged quasi-employment agreement.

## **RESERVATION OF RIGHT TO AMEND COMPLAINT**

Plaintiffs reserve the right to file amendments to this complaint as may be appropriate.

Respectfully submitted,

*/s/ Kevin K. Ross-Andino*
**Kevin K. Ross-Andino, FBN 66214**
kevin.ross@eclatlaw.com
**Jolynn M. Falto, FBN 1002743**
Jfalto@eclatlaw.com
**Nikki J. Pappas, FBN 126355**
nikki.pappas@eclatlaw.com
**Crisol Lopez-Palafox, FBN 1031282**
crisol.lopezpalafox@eclatlaw.com