UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA - ORLANDO DIVISION

ALEXA KLINAKIS, JORDAN KRAVETZKY, *et al.*
on behalf of themselves and as representatives of other class
and collective action members similarly situated,

      Plaintiffs,

v.                       Case No.: 6:22-cv-01756-RBD-DAB

ALTUS JOBS, LLC, and
SAUM DUSTIN SHARIFI

      Defendants.

_____/

## PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND/ OR TEMPORARY RESTRAINING ORDER

Plaintiffs, by and through their undersigned counsel, and pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 6.01 and 6.02, file this Emergency Motion for Injunctive Relief against Defendants, SAUM D. SHARIFI ("Defendant Sharifi") and ALTUS JOBS, LLC ("Altus") (collectively referred to as "Defendants"). Plaintiffs' undersigned counsel has personal knowledge of the information contained in this Motion and files this Motion under penalty of perjury.

As explained below, injunctive relief is needed in order to prevent the Defendants from continuing to threaten, harass, intimidate, and stalk the Plaintiffs, members of the putative class, witnesses the Plaintiffs intend to call to testify in this matter, and Plaintiffs' Counsel, as well as their staff and family members. Therefore, the Plaintiffs have filed this as an Emergency Motion and request a ruling on said Motion by no later than March 21, 2023, pursuant to Local Rule 3.01(e).

## <u>FACTUAL AND PROCEDURAL HISTORY</u>

1.      On September 24, 2022, Plaintiffs filed their Collective and Class Action Complaint ("Complaint") against Defendants for: I) Violation of the Fair Labor Standards Act ("FLSA"); II) Failure to Comply with 29 C.F.R. § 531.35 "free and clear" payment; "kickbacks"; III) Unjust Enrichment; and IV) Piercing the Corporate Veil to hold Defendant Sharifi individually liable.

2.      Since this lawsuit was filed, Defendants have threatened, harassed, and intimidated the Plaintiffs in an effort to deter them from pursuing this lawsuit. As explained below, Defendants have also threatened and harassed Plaintiffs' counsel, family members of Plaintiffs' counsel and staff members of éclat Law, PA.

### *<u>Efforts to Threaten, Harass, Intimidate and Stalk the Plaintiffs in this Matter.</u>*

3.      Three (3) days after this lawsuit was filed, Defendant Sharifi sent Plaintiff, ALEXA KLINAKIS ("Plaintiff Klinakis") a string of threatening text messages from an anonymous phone number, stating:[1]



4.      The timing of the text messages from Defendant Sharifi is not coincidental.  The above text messages were sent on September 27, 2022, which is the same day

---

[1] As further explained below, this is not the first time that Defendant Sharifi sent Ms. Klinakis threatening text messages from an anonymous phone number.

Defendants were put on notice of the subject lawsuit. *See* the Notice of Related Action filed in *Eric Taylor v. Altus Jobs, LLC and Saum Sharifi*, Case No. 2020-CA-005398-O, a copy of which is attached hereto as Exhibit "A".

5.     Shortly thereafter, on October 3, 2022, Ms. Klinakis' vehicle was violently vandalized. The back window of her vehicle was shattered and her vehicle was egged. Photos of the damage to Ms. Klinakis' vehicle are attached hereto as Exhibit "B".

6.     Footage from Ms. Klinakis' security camera shows that her vehicle was vandalized at approximately 2:43 AM on October 3, 2022.[2]

7.     Later that same day, at 11:33 AM on October 3, 2022, Ms. Klinakis received another threatening text message from an anonymous phone number, stating "[j]ust getting warmed up". *See* text message dated October 3, 2022, attached hereto as Exhibit "C".

8.     Ms. Klinakis immediately contacted the Seminole County Sherriff's Office on October 3, 2022, to report that her vehicle had been vandalized and that she had been receiving threatening text messages. A copy of Alexa Klinakis' Police Report is attached hereto as Exhibit "D". Ms. Klinakis reported to the Sherriff's Office that she had reason to believe that her former boss, Saum Sharifi, was responsible for vandalizing her vehicle and is who has been sending her threatening text messages from unknown numbers.

---

[2] While the incident was caught on camera, the individual's face was concealed. Therefore, the surveillance footage alone was not clear enough to positively identify the individual that vandalized Ms. Klinakis' property.

9.      On the same day that Ms. Klinakis's vehicle was vandalized, the vehicle of another former Altus employee, Eric Taylor, was also vandalized in a similar manner.[3]

10.     Specifically, the front driver's side window and back driver's side window of Mr. Taylor's vehicle were shattered, the hood of his vehicle was scratched, and eggs were smashed on the hood and roof of his vehicle. Photos of the damage to Mr. Taylor's vehicle are attached hereto as Exhibit "E". Mr. Taylor also immediately contacted the Seminole County Sherriff's Office on October 3, 2022, to report that his vehicle had been vandalized.  A copy of Eric Taylor's Police Report is attached hereto as Exhibit "F".

11.     There is good cause to believe that Defendant Sharifi, or agents of Defendant Sharifi, vandalized *both* Mr. Taylor and Ms. Klinakis' vehicles on October 3, 2022. There is no other plausible explanation as to why two former employees of Defendant would have their property brutally vandalized on the same day, shortly after Defendant was provided notice of the instant lawsuit.

12.     Ms. Klinakis and Mr. Taylor both received numerous threatening text messages prior to October 3, 2022.

13.     Defendant Sharifi started sending Ms. Klinakis threatening text messages in early 2021, based on her involvement in prior lawsuits that were filed by several former Altus employees against the Defendants in the Ninth Judicial Circuit Court in and for Orange County. The prior lawsuits were filed in May of 2020 and sought renumeration

---

[3] Eric Taylor is a former Altus employee and a key witness in this case.

4

for unpaid wages, among other things. *See Eric Taylor v. Altus Jobs, LLC and Saum Sharifi*, Case No. 2020-CA-005398-O; *Anrich Bekker v. Altus Jobs, LLC and Saum Sharifi*, Case No. 48-2020-CA-005379-O; *Jordan Kravetzky v. Altus Jobs, LLC and Saum Sharifi*, Case No. 2020-CA-5380-O; *Mateo Velez v. Altus Jobs, LLC and Saum Sharifi*, Case No. 2020-CA-5432-O; *Laney Heidrich v. Altus Jobs, LLC and Saum Sharifi*, Case No. 2020-CA-5381-O (collectively referred to as the "State Court Actions").[4]

14.    Defendants' efforts to threaten and intimidate the Plaintiffs began while the State Court Actions were still pending. However, to date, the threats and now the physical violence upon former employees' property have escalated and the named Plaintiffs are in fear of retaliation from their former employer.

15.    On February 18, 2021, Plaintiffs undersigned counsel attempted to communicate with prior counsel for the Defendants in an effort to potentially negotiate a settlement for the dispute between the Defendants and former Altus employees, including Alexa Klinakis. Less than two (2) hours after the communication between the parties' attorneys on February 18, 2021, Defendant Sharifi began sending harassing text messages to Plaintiff Klinakis.

16.    For instance, Defendant Sharifi sent the following text messages to Plaintiff Klinakis between February 18, 2021 and February 28, 2021:

---

[4] To avoid wasting the court's resources by litigating several parallel cases, and to avoid the duplication of efforts by all the parties involved, the former Altus employees dismissed the prior state court actions and have elected to initiate and join this class and collective action instead.



*See* additional text messages Defendant Sharifi sent to Plaintiff Klinakis in February of 2021, which are attached hereto as Exhibit "G".

17.    While the initial text messages were sent from Defendant Sharifi's personal cell phone number, the subsequent text messages were sent from anonymous phone numbers. Upon information and belief, Defendant Sharifi used a third-party service to send the text messages from anonymous phone numbers in an effort to conceal his identity—an action that Sharifi has a longstanding history of engaging in. Regardless,

6

it is evident from the timing and content of the messages, that the messages were sent by Defendant Sharifi.

18.    Defendant Sharifi also used anonymous phone numbers to send similar text messages to Mr. Taylor in March 2021.[5]





19.    Defendant Sharifi also sent Mr. Taylor harassing and threatening text messages from his personal cell phone.






---

[5] At least one of the text messages was sent from the same number that texted Alexa Klinakis. Eric Taylor and Alexa Klinakis both received the same text message from phone number (561)763-5614 on February 19, 2021.

20.    It is evident that Defendant Sharifi's text messages were intended to threaten, embarrass, and harass Mr. Taylor and Ms. Klinakis.

21.    Moreover, there is good cause to believe that Defendant Sharifi, or agents of Defendant Sharifi have been stalking Ms. Klinakis.

22.    In October of 2022, several suspicious vehicles were captured on Ms. Klinakis' security cameras repeatedly driving down her street and stopping or idling in front of her house. Photographs of the vehicles in question are attached hereto as Exhibit "H". For instance, on October 4, 2022, the day after Ms. Klinakis' vehicle was vandalized, her security cameras show that around 1:30 pm a blue Dodge Charger idled near her back gate for several minutes then slowly crept around her corner lot, before stopping and idling in front of her house. Ms. Klinakis walked out of her front door and watched the vehicle idle in front of her neighbor's house for approximately 30 seconds before it slowly drove up the street, made a U-turn, started heading back towards Ms. Klinakis' house before stopping and parking towards the end of her street for approximately 12 minutes. The vehicle then started driving back towards Ms. Klinakis' house – however, after she walked down towards her driveway, the vehicle pulled onto a side street a few houses up from hers, did a three-point turn and drove away.[6]

---

[6] Ms. Klinakis reported this incident to the Seminole County Sherriff's Office. The Sherriff's Office was able to obtain the vehicle's license plate number from footage obtained from Ms. Klinakis' security cameras. However, the license plate was reported stolen, therefore, the Sherriff's Office was unable to identify the owner of the vehicle.

23.     Furthermore, on October 9, 2022, Ms. Klinakis' security cameras show that a suspicious black SUV drove down Ms. Klinakis' street and idled in front her home three (3) times in approximately one (1) minute.

24.      Ms. Klinakis' security cameras also show that on October 10, 2022, a black sedan (which appears to be the same vehicle driven by the individual that vandalized Ms. Klinakis' car on October 3, 2022) drove by Ms. Klinakis' house around 7:15pm, turned around in the driveway across the street from her house, drove back by her house, and then sped off.

25.     Defendant Sharifi has a history of stalking and has previously violated injunctions issued by other courts.

26.     For example, on or about April 20, 2010, Defendant Sharifi was arrested and charged with trespassing an occupied structure, stalking, and resisting an officer without violence. *See State of Florida v. Saum Sharifi*, Case No. 2010MM004494A (Fla. 18th Cir. Ct. 2010).  The charges stem from a complaint filed by Defendant Sharifi's previous partner who alleged that Defendant Sharifi knowingly, intentionally and repeatedly sent her harassing messages that put her in fear for her safety. Furthermore, the Arrest Report indicates that Defendant Sharifi drove his parents' vehicle to the victim's apartment building so that the victim would not recognize the vehicle and waited outside of the apartment building until the victim came home.  He then followed the victim up to her apartment and attempted to gain entry to her apartment despite the victim's repeated requests for him to leave. The Arrest Report states that Defendant Sharifi fled from the scene after the victim's neighbors began to exit their

apartments after hearing the victim scream. Defendant Sharifi was ultimately sentenced to one (1) year probation for trespassing an occupied structure.

27.     On or about June 24, 2010, Defendant Sharifi was arrested and charged with aggravated stalking in violation of Fla. Stat. §741.048(4) and for violating an injunction for protection against domestic violence in violation of Fla. Stat. § 741.31(4)(A). *See State of Florida v. Saum Sharifi*, Case No. 2010CF002661A (Fla. 18th Cir. Ct. 2010). Defendant Sharifi was ultimately adjudicated guilty for violating an injunction for protection against domestic violence and was sentenced to one year probation.

28.     Defendant Sharifi's attempts to threaten, harass, and intimidate the Plaintiffs in this case, are consistent with his past conduct and criminal history.

29.     In addition to sending the Plaintiffs threatening and harassing text messages and vandalizing the Plaintiffs' property, there is good cause to believe that Defendant Sharifi has attempted to hack into the Plaintiffs' personal online accounts, as well as other former employees.

30.     For example, in March of 2021, a series of unauthorized charges were made to Mr. Taylor's personal credit card.  Upon further investigation, Mr. Taylor discovered that his LinkedIn account had been hacked into and his credit card information had been unlawfully obtained from his LinkedIn account.

31.     Furthermore, on October 7, 2022, Ms. Klinakis received an email notifying her that her Victoria Secret Credit Card account would be locked for 30 minutes due to several unsuccessful login attempts. However, Ms. Klinakis did not attempt to login

to her Victoria Secret Credit Card account that day.  Upon information and belief, Defendant Sharifi attempted to gain unauthorized access to said account.

### *Efforts to Threaten, Harass, and Intimidate Plaintiffs' Counsel*

32.    Altus was finally served in this matter on February 23, 2023, after several attempts were made to effectuate service. As explained in Plaintiffs' Request for Additional Time to Serve Defendants Pursuant to Order DE-17, the Plaintiffs have been attempting to serve Defendant Sharifi since December of 2022, however, he has been intentionally evading service.  *See* DE-18.[7]

33.    Shortly after Altus was served (and several days prior to Altus's initial deadline to respond to the Amended Complaint), Defendant Sharifi began sending threatening and vile text messages and emails to Plaintiffs' counsel and member(s) of their family, as well as staff members from éclat Law, PA.

34.    On March 15, 2023, Defendant Sharifi sent the following email to Plaintiffs' counsel:

---

[7] Plaintiffs initially hired a private process server to serve Defendants but the process server was unable to effectuate service despite numerous attempts to serve the Defendants. Therefore, Plaintiffs ultimately retained the Orange County Sherriff's Office to serve the Defendants.  The Sherriff's Office was able to serve Altus on February 23, 2023, but has been unable to serve Defendant Sharifi as of the date of filing this Motion.



35.    Starting at 7:33 AM on March 17, 2023, Defendant Sharifi began sending utterly false, defamatory, and vile emails to Plaintiffs' counsel and members of their law firm.



36.    Upon information and belief, Defendant Sharifi sent these emails from an anonymous email address using Proton Mail, which is an encrypted email service.

37.    Jolynn Falto Tomas, Esq. is a Partner of éclat Law, PA and one of the attorneys that represents the Plaintiffs in this matter. Needless to say, the only face-to-face interaction she has ever had with Defendant Sharifi was when she deposed him in the previous lawsuit that was filed against the Defendants in State Court.

38.    Shortly after sending the above-referenced emails, Defendant Sharifi began sending threatening text messages to Jolynn Falto Tomas' immediate family member(s) on March 17, 2023:[8]





39.    In addition to sending obscene emails and harassing text messages, Defendant Sharifi has also resorted to publishing false and defamatory Google Reviews on éclat

---

[8] Again, Defendant Sharifi sent these text messages from anonymous phone numbers.

Law's Google page in an apparent effort to deter Plaintiffs' counsel from pursuing this matter.

40.    For instance, on March 11, 2023, Defendant Sharifi posted the following Google review for éclat Law:



41.    On the same day, Defendant Sharifi published a similar negative review for éclat Law using a different user name. *See* Google review attached hereto as Exhibit "I".

42.    Defendant Sharifi posted a third false and defamatory Google review on March 16, 2023, posing as Eric Taylor, who is a client of éclat Law and former employee of Altus. *See* Google Review attached hereto as Exhibit "J".

43.    Again, it is clear the Defendants actions are intended to threaten, harass, and intimidate Plaintiffs' counsel to deter them from representing the Plaintiffs in this case.

44.    Pursuant to Fed. R. Civ. P. 65(c), the Plaintiffs will post a bond in the amount

of $500 to secure the injunctive relief sought in this Motion.

## **MEMORANDUM OF LAW**

### A. Standard of Review

Pursuant to Local Rules 6.01 and 6.02, a motion for a temporary restraining order and motion for preliminary injunction must include the following: (1) a precise and verified description of the conduct and the persons subject to restraint, (2) a precise and verified explanation of the amount and form of the required security (3) a supporting legal memorandum establishing the likelihood that the movant ultimately will prevail on the merits of the claim, the irreparable nature of the threatened injury, the harm that might result absent a restraining order, and the nature and extent of any public interest affected, and (5) a proposed order. *See* Local Rules 6.01(a)-(b), 6.02(a).

Further, a motion for preliminary injunction "must include as an attachment each paper on which the movant relies" and the "movant must notify each affected party as soon as practical unless the movant establishes by clear and convincing evidence an extraordinary circumstance not requiring notice." Local Rule 6.02(a)-(b). The main function of a preliminary injunction is "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits. *See United States v. Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986).

Per case law interpreting Rule 65 of the Federal Rules of Civil Procedure, four factors must be considered in determining whether a temporary restraining order or preliminary injunction should be granted. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  A party seeking a preliminary injunction must demonstrate:

> "(1) a substantial likelihood of success on the merits; (2)  that  irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.*

"Controlling precedent is clear that injunctive relief may not be granted unless the [movant] establishes the substantial likelihood of success criterion." *Id.* at 1226. These factors, however, are not rigidly applied. Rather than assigning a fixed quantitative value to each factor, "the court must use a flexible scale which balances each consideration and arrives at the most equitable result given the particular circumstances." *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1334 (S.D. Fla. 2001).

## B. THE REQUIREMENTS OF LOCAL RULE 6.01 AND 6.02 HAVE BEEN MET, THEREFORE, THIS COURT SHOULD GRANT THE PLAINTIFFS THE INJUNCTIVE RELIEF REQUESTED IN THIS MOTION.

Plaintiffs have met the requirements of Local Rule 6.01 for a temporary restraining order and Local Rule 6.02 for a preliminary injunction to be granted and all factors weigh in favor of granting injunctive relief to prevent the Defendants from threatening, harassing and/ or physically harming the Plaintiffs (including members

of the putative class), witnesses the Plaintiffs intend to call to testify in this matter, and Plaintiffs' Counsel, as well as their staff and immediate family members.

First, the Plaintiffs provide the following precise and verified description of the conduct and persons subject to be restrained:

> Defendants, including their agents, representatives, or individuals acting on their behalf, must be enjoined from: (1) harassing, threatening, or intimidating the Plaintiffs, members of the putative class,[9] witnesses in this case, including, but not limited to, Eric Taylor and Anrich Bekker, Plaintiffs' Counsel, relatives of Plaintiffs' counsel, and employees of éclat Law (collectively referred to as the "Protected Individuals"); (2) communicating directly with the Plaintiffs, members of the putative class, the Plaintiffs' witnesses in this case, and relatives of Plaintiffs' counsel;[10] (3) coming within 500 feet of the residence of any of the Protected Individuals; (4) coming within 500 feet of éclat Law without the express invitation of Plaintiffs' Counsel; (5) causing bodily harm to any of the Protected Individuals; and (5) damaging tangible property belonging to any of the Protected Individuals.

Second, Plaintiffs believe that the amount and type of security necessary is $0 or a nominal monetary amount at the Court's discretion because Defendants will not experience any harm if they are enjoined from harassing, threatening, intimidating, physically harming or communicating with the Plaintiffs, members of the putative class, and any witnesses in this case. Nevertheless, out of an abundance of caution, the Plaintiffs have posted $500 as security "to pay the costs and damages sustained by any

---

[9] The putative class is defined as all former and current employees who worked for Altus any time from 2017 to present, who, consistent with Altus' website, were recruiters/sales people recruiting talent for clients on behalf of ALTUS and were not compensated their A) statutory minimum wage for all hours worked per week during one (1) or more weeks, and/or B) were not compensated time-and-a-half for all hours worked in excess of forty (40) hours, and/or C) were not fully compensated monies owed to them for work performed on behalf of Altus, and D) experienced employment retaliation at the hands of Altus and or Defendant Sharifi. *See* DE-7, p. 10-11.

[10] This includes calling, texting, e-mailing, and all in-person and electronic communications. If Defendants wish to communicate with the Plaintiffs, all communications shall be directed towards Plaintiffs' undersigned counsel and through Defendant(s)' current or future counsel.

party found to have been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c); *see also* Local Rule 6.01(a)(3) and 6.02(a)(1).

The Plaintiffs have also attached to this motion each paper upon which they rely as evidence to support this Motion and submitted a proposed Order to the Court granting the injunctive relief requested herein. As demonstrated below, the Plaintiffs have also established the likelihood that they will ultimately prevail on the merits of their claim, the irreparable nature of the threatened injury, the harm that might result absent a restraining order, and the nature and extent of any public interest affected. *See* Local Rules 6.01(b), 6.02(a).

### a. *Substantial Likelihood of Success on the Merits*

Section 1512 of Title 18 prohibits tampering with a witness, victim or informant in both civil and criminal judicial proceedings.  *See* 18 U.S.C. § 1512; *see also* 18 U.S.C. § 1515(a)(1).  Section 1512 of Title 18 states in relevant part the following:

(a)(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to—

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; or

(C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the

commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—

(1) attending or testifying in an official proceeding;

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;

or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

The evidence shows Defendant Sharifi has harassed and tampered with witnesses in this case, in violation of 18 U.S.C. § 1512(b) and (d). Specifically, text messages sent by Defendant Sharifi and the vandalism of Ms. Klinakis' and Mr.

Taylor's vehicles demonstrates that Defendant Sharifi has used intimidation and threats to induce Mr. Taylor and the Plaintiffs, including Ms. Klinakis and other members of the putative class, to dismiss the subject lawsuit and/ or to influence or prevent them from testifying as a witness in this case.

Furthermore, the threatening text messages and vandalism of the subject vehicles shows that Defendant Sharifi used physical force or the threat of physical force to induce Mr. Taylor and the Plaintiffs, including Ms. Klinakis and other members of the putative class, to dismiss the subject lawsuit and/ or to influence or prevent them from testifying as a witness in this case, in violation of 18 U.S.C. § 1512(a)(2).

Retaliating against a witness, victim or an informant in a federal proceeding is also prohibited under 18 U.S.C. § 1513. Section 1513 of Title 18 states in relevant part the following:

> (b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—
>
>> (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
>>
>> (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer;

The evidence shows that Defendant Sharifi knowingly damaged Ms. Klinakis and Mr. Taylor's vehicles to retaliate against them for participating in standard employment lawsuits to protect their legal rights. The evidence also shows that Defendant Sharifi sent text messages to Ms. Klinakis and Mr. Taylor threatening to

cause them bodily harm and/ or threatening to damage their property in retaliation for testifying and participating in this lawsuit. For instance, on September 27, 2022, three (3) days after this lawsuit was filed, Defendant Sharifi sent Plaintiff Klinakis a text message stating that "I'm coming for you [i]n ways you can't even imagine[.]" Defendant Sharifi also texted Ms. Klinakis on October 3, 2022, the same day her vehicle was vandalized, stating "[j]ust getting warmed up". More recently, he texted Ms. Klinakis on January 24, 2023, stating in relevant part the following: "[d]o yourself a favor and get lost for good, leave the past in the past. If I have to see your name again I swear to [] god I will have no mercy on you." Based on the foregoing there is a substantial likelihood of success on the merits of the Plaintiffs' Motion for Injunctive relief and claims against the Defendants for retaliating against them for questioning Defendants' unlawful practices.

### b. *The Plaintiffs Will Suffer Irreparable Harm if an Injunction is Not Issued*

In order to establish an irreparable harm or injury, a party must show that remedies at law, such as monetary damages, are inadequate to compensate for that injury. *Council v. Department of Veterans Affairs,* 2010 U.S. Dist. LEXIS 774, 2010 WL 98984, 3 (M.D. Fla. 2010) (citing *Ebay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L. Ed. 2d 641 (2006)).

Based on Defendant Sharifi's criminal history and the threats that he has made to the Plaintiffs (including member(s) of the putative class), Plaintiffs' witnesses, Plaintiffs' Counsel and members of their immediate family, it is clear that injunctive relief is needed to protect these individuals from physical harm. Monetary damages

are inadequate to compensate these individuals for harassment and bodily injury and injunctive relief is needed to protect their safety and wellbeing.

### c. *The Threatened Injury to the Plaintiffs Outweighs any Potential Harm that Injunctive Relief could inflict on the Defendants*

A preliminary injunction requires a balancing of the relative harm between the Plaintiffs and Defendants, with Plaintiffs demonstrating that their threatened harm outweighs the harm a preliminary injunction may cause to Defendants. *Rumfish Y Vino Corp. v. Fortune Hotels, Inc.*, No. 8:19-cv-595-T-36AEP, 2019 U.S. Dist. LEXIS 112789, at *54 (M.D. Fla. Apr. 24, 2019). Here, Plaintiffs' threatened injury substantially outweighs any potential injury to the Defendants arising from the relief requested.

As evidenced above, Plaintiffs have already had their property vandalized and have already been harmed by the threatening and harassing text messages sent by Defendant Sharifi. This harm will continue to occur unless this Motion is granted.[11] Furthermore, the health and safety of the Plaintiffs, witnesses, putative class members, and Plaintiffs' counsel will remain at risk unless this Court grants the injunctive relief requested herein.

Moreover, an injunction is needed to prevent Defendants from tampering with key witnesses in this case. It is clear that Defendants actions are intended to: (1) intimidate the Plaintiffs (and their counsel) into dropping their claims against the

---

[11] Plaintiffs' Counsel is in the process of working with local law enforcement to hold the individuals criminally responsible for the actions described herein. However, Court intervention is needed to ensure the safety and wellbeing of the Protected Individuals and to prevent the obstruction of justice.

Defendants, and (2) to deter key witnesses from testifying against Defendants in this case. Thus, an injunction is needed to prevent the obstruction of justice.

On the other hand, Defendants have not been harmed and will not be harmed if the Court enters the requested injunction. Enjoining Defendants from communicating directly (indirectly, or otherwise) with the Plaintiffs, members of the putative class, and the Plaintiffs' witnesses in this case, will prevent Defendants from threatening, harassing and intimidating these individuals. This causes no harm to the Defendants whatsoever. Plaintiffs are represented by counsel, therefore, if Defendants wish to communicate with the Plaintiffs, all communications can occur through Plaintiffs' undersigned counsel.[12] Accordingly, the balance of harms weighs in Plaintiffs' favor and their motion for injunctive relief should be granted.

### d.  Injunctive Relief would Serve the Public Interest

Finally, Plaintiffs must demonstrate that the requested preliminary injunction would not disserve or be adverse to the public interest. *Rumfish Y Vino Corp.* at *57. The Court must analyze the effect of the preliminary injunction on the public's interest. *Merrill v. Dunn*, 191 F. Supp. 2d 1346, 1354 (M.D. Fla. 2002).

It is in the public's interest that Defendants be enjoined from harassing, threatening, or intimidating the Plaintiffs and members of the putative class.  It is also in the public interest to protect the judicial process by enjoining Defendants from

---

[12] Further, as of the date of this Motion, it is clear that although Winderweedle, Haines, Ward & Woodman, P.A. made "a limited appearance" for purposes of filing a Motion for Extension of Time on behalf of Defendant Altus Jobs, LLC, the Court has made it clear that limited appearances are impermissible. Therefore, at the very least, Altus can direct any and all future correspondence through their current counsel of record and any counsel of record they may retain thereafter.

tampering with witnesses in this case.  In other words, injunctive relief is needed to ensure the administration of justice.

### C. NOTICE OF THE INJUNCTIVE RELIEF SOUGHT HEREIN SHOULD NOT BE REQUIRED DUE TO EXTRAORDINARY CIRCUMSTANCES.

Local Rule 6.02(b) requires the movant to "notify each affected party as soon as practical unless the movant establishes by clear and convincing evidence an extraordinary circumstance not requiring notice."

Despite Plaintiffs' diligent attempts, Plaintiffs have been unable to serve Defendant Sharifi with the Complaint in this matter.  *See* DE-16, pp. 4 - 5; DE-18, pp. 4 - 5.  Defendant Sharifi is the sole owner and registered agent for Altus. However, Defendant Sharifi has actively and purposely evaded service both at his residence and at Altus.  *Id.*  To date, Plaintiffs have tried serving Defendant Sharifi at least eight (8) times, to no avail.[13]  The Orange County Sherriff's Department also made approximately seven (7) additional attempts to serve Sharifi thereafter. As such, Plaintiffs are unable to notify Defendants of their motion for injunctive relief.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court grant its Motion for Injunctive Relief and enter an Order enjoining Defendants (including their agents, representatives, or individuals acting on their behalf) from: (1) harassing, threatening, or intimidating the Protected Individuals; (2) communicating directly

---

[13] The Plaintiffs tried serving Defendants on the following dates: December 5, 2022, December 6, 2022, December 15, 2022, December 23, 2022, December 31, 2022, January 4, 2023, and January 5, 2023.  The Plaintiffs are currently in the process of trying to serve Defendant Sharifi through the Sherriff's Office but as of the date of this Motion, Defendant Sharifi still has not been served.

with the Plaintiffs, members of the putative class, Plaintiffs' witnesses in this case, and relatives of Plaintiffs' counsel;[14] (3) coming within 500 feet of the residence of any of the Protected Individuals; (4) coming within 500 feet of éclat Law without the express invitation of Plaintiffs' Counsel; (5) causing bodily harm to any of the Protected Individuals; and (6) damaging tangible property belonging to any of the Protected Individuals, and granting any other relief this Court deems just, equitable, and proper.

Respectfully submitted,

**éclat Law, PA**
*/s/ Kevin Ross-Andino*
Kevin K. Ross-Andino, FBN 66214
kevin.ross@eclatlaw.com
Nikki Pappas Hudson, FBN 126355
nikki.pappas@eclatlaw
Jolynn M. Falto, FBN 1002743
jfalto@eclatlaw.com
307 Cranes Roost Blvd. Suite 2010
Altamonte Springs, Florida 32701
Phone: (407) 636-7004

*Counsel for Plaintiffs and the class/collective action members.*

## **VERIFICATION**

By signing my name below, I am certifying that the factual statements made in this Motion and memorandum of law are true and correct to the best of my knowledge and that I made a good faith effort to confirm those facts before signing this document and verifying this Motion.

*/s/ Kevin Ross-Andino*

---

[14] This includes calling, texting, e-mailing, and all in-person and electronic communications. If the Defendants wish to communicate with the Plaintiffs, all communications shall be directed towards Plaintiffs' counsel of record.